UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

ALLEN BONE,
    Plaintiff,

v.        07-1353

ROGER E. WALKER, JR., et al.,
Defendants.

## MEMORANDUM OPINION AND ORDER

    Before the court is the defendants' unopposed summary judgment motion [60].

## BACKGROUND

    Plaintiff, Allen Bone is currently incarcerated at Pontiac Correctional Center. On December 20, 2007, Plaintiff filed a 42 U.S.C. § 1983 lawsuit alleging a violation of his constitutional rights. In a February 7, 2008 Case Management and Merit Review Order, the court set forth Plaintiff's relevant claims as: 1) Defendants Yusko, Backard, John Doe #1, and John Doe #2 violated the Eighth Amendment when they used excessive force against the plaintiff on November 29, 2006; 2) Defendants Angus, Yusko, Benton, Walker, Jones, and John Doe #1, #2, and #3 violated the plaintiff's Eighth Amendment rights when they refused medical care to the plaintiff for injuries received on November 29, 2006; 3) Defendants Angus, Yusko, Benton, Walker, Jones, and John Doe #1, #2, #3 violated the plaintiff's Eighth Amendment and Fourteenth Amendment rights based on the placement and conditions in the strip cell on November 29, 2006. In a June 17, 2008 text order the court noted that Plaintiff identified John Doe # 3 as David Lingle. Defendant Lingle's waiver of service of summons was filed with the court on July 10, 2008. (Doc. 35). The record indicates Plaintiff did not submit the names of John Doe's #1 and #2. Plaintiff seeks compensatory damages in the amount of $50,000,000, punitive damages in the amount of $50,000,000, as well as attorneys fees and costs. (Complaint, p. 21).

    Defendants deny they violated Plaintiff's constitutional rights through the use of excessive force, denial of access to medical care and treatment or conditions of confinement. Defendants deny Plaintiff is entitled to any relief and respectfully request summary judgment be entered in their favor.

## SUMMARY JUDGMENT STANDARD

    Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Any

discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

"Summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events. *Johnson v. Cambridge Indus.*, Inc., 325 F.3d 892, 901 (7th Cir. 2000). A party opposing summary judgment bears the burden to respond, not simply by resting on its own pleading but by "set[ting] out specific facts showing a genuine issue for trial." *See* Fed. R. Civ. P. 56(e). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If [the nonmovant] does not [meet his burden], summary judgment should, if appropriate, be entered against [the nonmovant]." Fed. R. Civ. P. 56(e). Further, "[t]he plaintiff cannot merely allege the existence of a factual dispute to defeat summary judgment …. Instead, he must supply evidence sufficient to allow a jury to render a verdict in his favor." *Basith v. Cook County*, 241 F.3d 919, 926 (7th Cir. 2001). Specifically, the non-moving party "must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Filipovic v. K&R Express Systems, Inc.*, 176 F.3d 390, 390 (7th Cir. 1999). Failure by the non-movant to meet all of the above requirements subjects him to summary judgment on his claims.

Affidavits must be based on the personal knowledge of the affiant and "set out *facts* that would be admissible in evidence." Fed. R. Civ. P. 56(e) (emphasis added). Personal knowledge may include inferences and opinions drawn from those facts. *Visser v. Packer Eng. Assoc., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991). "But the inferences and opinions must be grounded in observation or other first-hand personal experience. They must not be based on flights of fancy, speculations, hunches, intuitions or rumors remote from that experience." *Visser*, 924 F.2d at 659.

## UNDISPUTED MATERIAL FACTS[1]

1. Plaintiff is currently incarcerated at Pontiac Correctional Center.
2. Plaintiff transferred into Pontiac Correctional Center on November 29, 2006. (Exhibit A, Plaintiff's Deposition Transcript, p. 8).
3. Plaintiff informed Defendant Yusko he was on a hunger strike and wanted to speak to a supervisor. (Exhibit A, pp. 16-17).

---

[1]The only exhibit, Exhibit A (plaintiff's deposition), is attached to the Defendants' Memorandum of Law [61].

4. Plaintiff asked to speak with Defendant Blackard. (Exhibit A, p. 17).
5. Plaintiff placed a towel over his window in an attempt to have a supervisor talk to him on November 29, 2006. (Exhibit A, p. 9, lines 8-11).
6. Plaintiff was told to remove the towel from his window and refused. (Exhibit A, p. 9, lines 14-17).
7. The tact team came to Plaintiff's cell in order to extract him from the cell. (Exhibit A, p. 10, lines 1-5).
8. Plaintiff was housed behind a solid door that had a window. (Exhibit A, p. 20, lines 8-9).
9. It is a rule violation to put a towel over your window. (Exhibit A, p. 19, lines 3-5).
10. A Lieutenant P. Todd was the tact team leader on November 29, 2006. (Exhibit A, p. 21).
11. Defendant Yusko was not a member of the tactical team. (Exhibit A, pp. 23- 24).
12. Defendant Blackard was not a member of the tactical team. (Exhibit A, p. 24, lines 3-4).
13. Defendant Yusko was not involved in Plaintiff's claims regarding force or injury to Plaintiff's rectum. (Exhibit A, p. 50, lines 20-24).
14. Defendant Blackard was not involved in Plaintiff's claims regarding force and injury to Plaintiff's rectum. (Exhibit A, p. 50, lines 1-4).
15. Plaintiff was ordered to be taken to the strip cell by the tactical team. (Exhibit A, p. 30, lines 7-19). Plaintiff was escorted to a strip cell by the tactical team. (Exhibit A, p. 27, lines 7-10).
16. No member of Mental Health was present when Plaintiff was escorted to the strip cell. (Exhibit A, p. 28, lines 21-24).
17. Mental Health was told by a member of the tactical team that Plaintiff was going to be a problem. (Exhibit A, p. 29, lines 4-8).
18. Plaintiff was seen by Defendant Angus when he was moved to the strip cell. (Exhibit A, pp. 31-32).
19. Plaintiff told Defendant Angus and an unnamed psychologist that he did not want to speak with them. (Exhibit A, p. 33, lines 8-24).
20. Plaintiff claims he was refused treatment by the tact team. (Exhibit A, p. 35, lines 13-15).
21. Plaintiff was placed on his knees by the tactical team when he was transported to the strip cell. (Exhibit A, pp. 32-33).
22. Plaintiff was requesting treatment for his leg and back. (Exhibit A, p. 35, lines 18-20).
23. Plaintiff did not suffer any injury from the use of mace during the cell extraction. (Exhibit A, p. 36, lines 16-18).
24. Plaintiff does not know who took off his shackles, other than it is an unnamed member of the tactical team and a John Doe defendant. (Exhibit A, p. 37, lines 12-22).
25. Plaintiff claims it is the John Doe individual who removed his shackles and moved the shackles across Plaintiff's rectum. (Exhibit A, p. 38, lines 4-8).
26. Plaintiff claims that he suffered a sore rectum from the shackles moving across his rectum, but he did not notice any blood coming from his rectum. (Exhibit A, pp. 38-39).
27. Plaintiff requested treatment for his rectum from a nurse the next day. (Exhibit A, p. 39, lines 5-9).

3

28. Plaintiff claims the injury to his leg caused pain in his thigh that did not start hurting until the next day, or the pain was worse the next day. (Exhibit A, p. 40, lines 14-24).
29. Plaintiff did not complain to the Defendants on the 29th about the pain in his leg. (Exhibit A, p. 41, lines 8-10).
30. Plaintiff did not complain to the Defendants on the 30th about the pain in his leg. (Exhibit A, p. 41, lines 11-13).
31. Plaintiff did not complain to the Defendants about the pain in his back on the 29th. (Exhibit A, p. 41, lines 14-16).
32. Plaintiff did not complain to the Defendants about the pain in his back on the 30th. (Exhibit A, p. 41, lines 17-19).
33. Plaintiff did not complain to any of the Defendants about the pain in his rectum or any injury that may have been caused. (Exhibit A, p. 41, lines 20-23).
34. Plaintiff was placed in the strip cell for approximately 8 days. (Exhibit A, p. 42, lines 3-5).
35. Plaintiff went to the hospital six days after the 29th on a food strike. (Exhibit A, p. 42, lines 12-19).
36. Plaintiff claims that he was refused treatment during his time at the hospital for his leg, back, and rectum by a nurse. (Exhibit A, pp. 42-43).
37. None of the Defendants were present when Plaintiff was refused treatment at the hospital. (Exhibit A, p. 43, lines 22-24).
38. Defendant Walker was not present during the events alleged in Plaintiff's complaint on November 29, 2006. (Exhibit A, p. 44, lines 1-4).
39. Plaintiff does not know his claims against Defendant Walker. (Exhibit A, p. 44, lines 13-16).
40. Defendant Benton was not present during the events alleged in Plaintiff's complaint on November 29, 2006. (Exhibit A, p. 47, lines 16-22).
41. Defendant Benton did not have involvement with Plaintiff's placement in Mental Health. (Exhibit A, p. 50, lines 7-9).
42. Defendant Walker did not have involvement with Plaintiff's placement in Mental Health. (Exhibit A, p. 50, lines 10-12).
43. Defendant Jones did not have involvement with Plaintiff's placement in Mental Health. (Exhibit A, p. 50, lines 13-15).
44. Defendant Yusko did not have any involvement with Plaintiff's placement in Mental Health. (Exhibit A, p. 50, lines 16-19).
45. Plaintiff does not know Defendant Lingle's involvement in his claims. (Exhibit A, pp. 51-52).
46. Plaintiff claims he suffers injuries to his back and legs in the form of back spasms. (Exhibit A, p. 53, lines 4-7).
47. No doctor has diagnosed Plaintiff with having back spasms. (Exhibit A, p. 53, lines 13-15).
48. Plaintiff does not suffer any pain in his legs. (Exhibit A, p. 53, lines 16-18).
49. Plaintiff is not suffering from any problems with his rectum. (Exhibit A, p. 53, lines 19-21).

DISCUSSION AND CONCLUSION OF LAW

Defendants are entitled to summary judgment on Plaintiff's claims of excessive force. The Eighth Amendment prohibits the "unnecessary and wanton infliction of pain on prisoners," *DeWalt v. Carter*, 224 F.3d 607, 619 (7 th Cir. 2000), *quoting, Hudson v. McMillian*, 503 U.S. 1, 5 (1976). However, liability under 42 U.S.C. Section 1983 requires personal involvement in the alleged constitutional violation. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). Thus, an individual cannot be held liable in a §1983 action unless he caused or participated in an alleged constitutional violation. *McBride v. Soos*, 679 F.2d 1223, 1227 (7th Cir. 1982). Some causal connection or affirmative link between the action complained about and the official sued is necessary in order for a plaintiff to recover under § 1983. *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir.1983). "Section 1983 will not support a claim based on a respondeat superior theory of liability." *Polk County v. Dodson*, 102 S.Ct. 445, 453 (1981). A supervisory official can be liable only for his own misconduct, not that of those under his supervision. *Duckworth v. Franzen*, 780 F.2d 645 (7th Cir. 1985). Thus, a supervisory official must be personally involved in the alleged conduct to be liable. *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988).

Plaintiff has failed to prove Defendants Yusko's and Blackard's personal involvement in Plaintiff's excessive force claims such that Plaintiff could recover under 42 U.S.C. § 1983. Upon his placement in segregation, Plaintiff informed Defendant Yusko he was on a hunger strike and wanted to speak with a supervisor, Defendant Blackard. (Undisputed Material Facts #3, #4). Plaintiff was housed behind a solid door with a window. (Undisputed Material Fact #9). Plaintiff placed a towel over his window and refused to remove the towel, which was a rule violation. (Undisputed Material Facts #5, #6, #8). The tactical team came to Plaintiff's cell in order to extract him after he refused to remove the towel from his window. (Undisputed Material Fact #7). Defendants Yusko and Blackard were not members of the tactical team on November 29, 2006. (Undisputed Material Facts #11, #12). Defendants Yusko and Blackard were not involved in Plaintiff's claims of use of force or injury to his rectum. (Undisputed Material Facts #13, #14). Additionally, Defendants Yusko and Blackard did not order Plaintiff to be moved to another cell or participate in the transport of Plaintiff to a strip cell. (Undisputed Material Fact #15). Plaintiff failed to state a claim against Defendants Yusko and Blackard for the use of unconstitutional force because he does not allege their personal involvement in his claims as required by 42 U.S.C. §1983. There is no connection between the Defendants and the claims alleged by Plaintiff. Plaintiff violated the rules by placing a towel over his window and the tactical team was called, for both the safety of Plaintiff and the safety of the institution. There is no evidence that Defendants Yusko and Blackard were present at Plaintiff's cell and ordered the tactical team to use unconstitutional force or participated in any way in the alleged use of unconstitutional force. Plaintiff can offer no evidence of a causal connection between his alleged violent cell extractions and Defendants Yusko and Blackard. Therefore, summary judgment must be entered in favor of Defendants Yusko and Blackard due to their lack of personal involvement in any of the events concerning Plaintiff's claims of excessive force.

Further, Defendants were not deliberately indifferent to Plaintiff's medical needs. The Supreme Court has interpreted the Eighth Amendment as requiring a minimum standard for the treatment of inmates by prison officials: the prison conditions must not, among other things, involve the "wanton and unnecessary infliction of pain." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Prison officials violate the proscription against cruel and unusual punishment when they display deliberate indifference to a prisoner's serious medical condition. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Edwards v. Snyder*, 478 F.3d 827, 830-31 (7th Cir. 2007). This encompasses a broader range of conduct than intentional denial of necessary medical treatment, but it stops short of "negligen[ce] in diagnosing or treating a medical condition." *Estelle*, 429 U.S. at 106. Although a prisoner has the right to receive medical care, he does not have the right to determine the type and scope of care he personally desires. *Coppinger v. Townsend*, 398 F.2d 392, 394 (10th Cir. 1968) (*citing Lawrence v. Ragen*, 323 F.2d 410, 412 (7th Cir. 1963)). Claims for deliberate indifference to a serious medical need contain both an objective and a subjective component. Under the objective component, a prisoner must demonstrate that his need is "objectively, sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the need for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Under the subjective component, the prisoner must demonstrate that the official acted with a "'sufficiently culpable state of mind.'" *Farmer*, 511 U.S. at 834 (*quoting Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). In other words, a prison official must act or fail to act despite his knowledge of a substantial risk of serious harm. *Jones v. Simek*, 193 F.3d 485, 490 (7th Cir. 1999).

Plaintiff claims in his complaint that Defendants Angus, Yusko, Benton, Walker, Jones. and Lingle denied him access to medical care following the November 29, 2006 incident. However, Plaintiff testified during his deposition that he was denied treatment by the tactical team. (Undisputed Material Fact #20). While no member of Mental Health was present during Plaintiff's move to the strip cell, Plaintiff was seen by Defendant Angus when he was moved into the strip cell, and told both Defendant Angus and an unnamed psychologist that he did not want to speak to them. (Undisputed Material Facts #16, #18, #19). To the extent Plaintiff had any need for medical treatment at that time, Plaintiff failed to voice these needs to the medical professionals present at the strip cell.. While Plaintiff claims he was placed on his knees by the tactical team when he was transported to the strip cell and was requesting treatment for his leg and back, (Undisputed Material Facts ##21-22), Plaintiff testified during his deposition that he did not complain to the Defendants on November 29 or 30 regarding the pain in his leg or back, nor did he complain to any of the Defendants about the pain in his rectum or any injury that may have been caused during his move. (Undisputed Material Facts ##29-33). Plaintiff failed to produce evidence to show Defendants ignored his requests for medical care, because he did not request care from these defendants.

To the extent Plaintiff argues he was refused mental health treatment, Plaintiff refused to speak with the mental health professionals who were at his cell after his transfer. Additionally, Defendants Benton, Walker, Jones, and Lingle were not present during the November 29, 2006 incident and would have no knowledge of Plaintiff's claims that he was being denied treatment

6

for any of his alleged injuries. These Defendants do not meet the requisite showing that they were aware of a risk faced by Plaintiff, and consciously disregarded that risk. For any of the Defendants who may have been present at Plaintiff's cell on November 29, 2006, Plaintiff testified that he did not notice any blood coming from his rectum, that the injuries to his leg caused a worse pain on November 30, and that he did not suffer any injury from the use of mace during the cell extraction. (Undisputed Material Facts #26, #28, #23). While Plaintiff claims he suffers from injuries to his back and legs in the form of back spasms, no doctor has diagnosed Plaintiff with having back spasms. (Undisputed Material Facts ##46-47). Furthermore, Plaintiff does not currently suffer any pain in his legs or experience any problems with his rectum. (Undisputed Material Facts ##48-49). Even thought Plaintiff claims he was refused treatment for his injuries by a nurse approximately six days after the November 29, 2006 incident, none of the Defendants were present when Plaintiff was refused treatment at the hospital. (Undisputed Material Facts ##35-37). Plaintiff failed to support his claims of deliberate indifference, and accordingly, Defendants is granted summary judgment on this claim.

The plaintiff failed to prove an Eighth Amendment violation for conditions of confinement. The Eighth Amendment prohibits conditions of confinement that involve the unnecessary and wanton infliction of pain as well as those that are grossly disproportionate to the severity of the crime. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). However, prison conditions may be harsh and unpleasant without violating the Eighth Amendment's prohibition against cruel and unusual punishment. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. *Id.* at 834 (emphasis added). Additionally, prison officials are liable for inmate exposure to cruel and unusual conditions of confinement only where they have the requisite knowledge and intent. *Id.* at 837. In order to be liable, the official must know about the inhumane conditions and disregard an excessive risk to the inmate's health and safety. *Id.* Plaintiff fails to establish a violation of his Eighth Amendment rights due to the conditions of his confinement.

Plaintiff claims in his complaint that he was placed in a mental health strip-cell on suicide watch by Defendant Angus. (Complaint, ¶31). Plaintiff states Defendant Angus said Plaintiff was allowed to have a jumpsuit and blanket, but his request to Defendant Yusko for these items was refused and Plaintiff did not receive a blanket until the 3-11 shift. (Complaint, ¶¶31, 32). The following day, Plaintiff was given a mattress. (Complaint, ¶33). Plaintiff has failed to prove that Defendants were aware of his cell conditions or that he experienced the conditions set forth in his complaint. There is no evidence that Defendants were aware of Plaintiff's cell conditions and disregarded an excessive risk to Plaintiff's health and safety. Plaintiff failed to show that he was denied the minimal civilized measure of life's necessities creating an excessive risk to his health and safety, and Plaintiff has failed to establish Defendants' culpable state of mind. Plaintiff was placed in the strip cell for approximately eight days (Undisputed Material Fact #34) and was provided with a blanket the day he was placed in the strip cell, and a mattress the next day. (Complaint, ¶¶32, 33). Plaintiff lacks any evidence that his cell conditions fell below constitutional thresholds, or that the Defendants were aware of any unconstitutional conditions and failed to correct them.

7

Plaintiff does not claim that he was denied food, water, hygiene items, or that the temperature was too low. Plaintiff's claims of being denied a mattress or clothing lasted less than 24 hours. Prison staff had a legitimate penological interest in removing Plaintiff from his cell when he broke the rules by placing a towel over his window that prohibited any observation of Plaintiff, and subsequently placing Plaintiff in a cell that allowed for observation. Nothing in the record indicates Plaintiff suffered any injuries or that his health was impaired as a result of an eight day confinement in a strip cell. Additionally, there is no indication Plaintiff addressed his issues regarding cell conditions or his placement in the strip cell with Defendant Angus. Finally, because Plaintiff was not exposed to any harm, Defendants cannot be found deliberately indifferent for failure to protect Plaintiff from harm.

Plaintiff did not suffer a violation of his Fourteenth Amendment rights based on his placement in a strip cell. Questions of due process do not arise until a protected liberty or property interest has been interfered with by the State. *Kentucky Department of Corrections v. Thompson*, 109 S.Ct. 1904, 1908 (1989). Many of the penalties imposed after prison disciplinary hearings do not implicate such interests. *See Sandin v. Conner*, 115 S.Ct. 2293, 2301 (1995) (Finding no liberty interest in avoiding segregation absent a showing of a significant deprivation atypical of prison life); *Whitford v. Boglino*, 63 F.3d 527, 533 n.7 (7th Cir. 1995)(Demotion in grade status does not implicate federal due process rights); *Nance v. Vieregge*, 147 F.3d 589, 590 (7th Cir. 1998)(Loss of commissary privileges does not affect a liberty or property interest); *Tullis v. DeTella*, 1999 WL 90650 at *4 (N.D. Ill. 1999)(Loss of audiovisual privileges is not an atypical and significant deprivation in relation to ordinary incidents of prison life). In *Sandin*, the Supreme Court determined that the Fourteenth Amendment provides inmates a liberty interest in avoiding placement in more restrictive conditions, such as segregation, when those conditions pose an atypical and significant hardship when compared to the ordinary incidents of prison life. See 515 U.S. at 484, 115 S.Ct. 2293. Plaintiff cannot support his claims of a violation of his due process rights based on his placement in a mental health strip cell. The court construed these claims as against Defendants Angus, Yusko, Benton, Walker, and Jones. Plaintiff testified during his deposition that Defendants Benton, Walker, Jones, and Yusko did not have any involvement with Plaintiff's placement in mental health. (Undisputed Material Facts #41- 44). It was Plaintiff's own actions - placing a towel over his window - that prompted the tactical team to enter his cell and remove him to a strip cell. Additionally, Plaintiff's placement in the strip cell for eight days was not atypical or a significant hardship. As such, Plaintiff fails to state a claim under the Fourteenth Amendment.

Plaintiff failed to state a claim against Defendant Lingle. In the Court's Case Management and Merit Review Order, David Lingle, named in the Complaint as John Doe #3, was included in Plaintiff's Claims 1 and 2. However, Plaintiff's Complaint makes no specific claims against Defendant Lingle, and during his deposition testimony, Plaintiff was unable to state Defendant Lingle's involvement in his claims. (Undisputed Material Fact #45). Therefore, Defendant Lingle is granted summary judgment.

**Based on the foregoing, it is ordered:**

1. Pursuant to Fed. R. Civ. P. 56, the defendants' unopposed motion for summary judgment is granted [60]. The clerk of the court is directed to enter judgment in favor of the defendants and against the plaintiff. All pending motions are denied as moot, and this case is terminated, with the parties to bear their own costs.
2. If the plaintiff wishes to appeal this dismissal, he must file a notice of appeal with this court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If the plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal. Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also accumulate another strike under 28 U.S.C. 1915(g).

Enter this 25th day of January 2010.

___s/Harold A. Baker_____
Harold A. Baker
United States District Judge